43 C.C.P.A.(Patents)
**The SQUIRT COMPANY, Appellant,**

v.

**POLA–RONA, Inc., Appellee.**

**Patent Appeal No. 6160.**

United States Court of Customs and Patent Appeals.

Jan. 20, 1956.

464

Bacon & Thomas, Washington, D. C. (Leo A. Rosetta, Washington, D. C., of counsel), for appellant.

Wright, Brown, Quinby & May, Boston, Mass. (William M. Cushman, Washington, D. C., Herbert A. Baker, Oliver C. Morse, Boston, Mass., C. Willard Hayes, Washington, D. C., of counsel), for appellee.

Before O'CONNELL, Acting Chief Judge, and JOHNSON, WORLEY, COLE and JACKSON (retired), Judges.

JOHNSON, Judge.

This is an appeal from the decision of the Commissioner of Patents, speaking through the Assistant Commissioner, 101 U.S.P.Q. 76, reversing the decision of the Examiner of Trade-Mark Interferences which sustained appellant's opposition to registration of the mark sought by appellee.

On September 13, 1950, appellee, Pola-Rona, Inc., filed its application, serial No. 603,497, in the Patent Office for registration, under the Trade-Mark Act of 1946, 15 U.S.C.A. § 1051 et seq., of the mark "Splurge" to be used on non-alcoholic maltless soft drinks and syrups therefor and on soft drinks and carbonated waters. Continuous use of the mark since September 27, 1947 was alleged in the application.

On August 14, 1951, appellant filed notice of opposition to the registration so sought, alleging prior use of the trademark "Squirt" (Reg. Nos. 528,806, issued August 8, 1950; 410,117, issued November 7, 1944; 397,551, issued September 8, 1942; 388,777, issued July 8, 1941; 367,659, issued May 23, 1939; and 396,177, issued June 30, 1942). Five of the above registrations disclose the word "Squirt" in varied forms and the sixth shows the phrase "Just call me Squirt." In three of the registrations, the goods are described as a non-alcoholic grapefruit drink and as bases, syrups, and extracts for making them; and three registrations describe the goods as non-alcoholic maltless beverages, and concentrates and syrups therefor. As grounds of opposition, appellant alleged that it first used its marks long prior to the date of first use claimed by appellee; that it has, through its continuous advertising and sales established a valuable reputation for its beverages sold under the name of "Squirt;" and that the use by appellee of the mark "Splurge" will cause confusion in the minds of the purchasing public, and deceive the public as to the products of the respective parties.

Both parties filed stipulated statements of facts in lieu of testimony. In the statement of facts filed by appellant it is stated that the marks containing the word "Squirt," as above enumerated, are owned by appellant; that the trade-mark consisting of the word "Squirt" has been in continuous use by appellant and its predecessor on non-alcoholic beverages, sold as soft drinks, and the bases, syrups, concentrates and extracts for making the same since on

or about October 1, 1937. It also appears from the statement that appellant has sold to a large number of selected licensed soft drink bottlers the bases, syrups, concentrates and extracts for use in making a bottled carbonated beverage under instructions and in accordance with appellant's formula; that the bottlers have distributed and do now distribute the bottled carbonated beverage in bottles which are uniform in style and carry uniform labeling bearing appellant's trade-mark "Squirt;" and that appellant has expended large sums for advertising of the beverage bearing its "Squirt" trade-mark.

In the statement of facts filed by appellee, it is stated that on or about September 27, 1947, appellee adopted and has since used the trade-mark "Splurge" for fruit-flavored syrups in concentrated form and also on "ready-to-serve flavored drinks;" that the base of appellee's syrups and ready-to-serve drinks is, in all cases, fresh orange juice with added essences and materials as indicated on the various labels.

The Examiner of Interferences sustained appellant's opposition holding the marks were likely to cause confusion for the following reasons:

" * * * In the comparison of said marks, it is noted that both are one syllable words, differing in length only by one letter, the opposer's mark consisting of six letters while applicant's mark consists of seven; and both begin with the same letter 'S' and contain three letters in common. Although the terms 'Squirt' and 'Splurge' differ in meaning, they obviously contain certain marked similarities in appearance, and are also in certain respects, similar in sound. In addition to the above similarities, both terms are represented in script type, and each contains an underscoring line. * * * "

It was the examiner's opinion that although the involved marks "contain certain differences which are obvious from inspection thereof" that the marks are similar in more respects than they are different, and "that these similarities are of such nature, and when considered together with the nature of the products in connection with which they are used" that there is at least a reasonable likelihood that confusion, or mistake, or deception of purchasers will arise from the contemporaneous use thereof.

Upon appeal, the Assistant Commissioner reversed the examiner's decision and stated:

" * * * The issue to be determined is whether or not the purchasing public, upon seeing applicant's 'Splurge' orange drink is likely to believe that it comes from the same source as opposer's 'Squirt' carbonated drink. The marks do not look alike, and although there are some similarities in sound, each mark has its own distinctive connotation so dissimilar from the other that I do not believe that the ordinary, average purchaser is likely to believe that the products bearing the marks emanate from the same source. * * * "

In determining likelihood of confusion between marks on identical, or very similar, goods, it is proper to consider their appearance, sound and meaning. Firestone Tire & Rubber Co. v. Montgomery Ward & Co., 150 F.2d 439, 32 C.C.P.A., Patents, 1074. However, a combination of all three of these factors need not necessarily exist, and an opposition to registration may be sustained if the marks are so similar in either appearance, sound or meaning as to be likely to cause confusion.

Both parties have cited cases to support their contention. Prior decisions are persuasive but not necessarily determinative in opposition proceedings wherein the question is whether marks are confusingly similar. Similarity of the marks must be determined largely as a matter of opinion, and each case must rest on its own distinctive

facts. Hancock v. American Steel & Wire Co. of New Jersey, etc., 203 F.2d 737, 40 C.C.P.A., Patents, 931, and cases cited therein.

We have given careful consideration to the briefs and the arguments presented by counsel and agree with the decision of the Assistant Commissioner. The involved marks do not look alike, sound alike, nor have the same meaning and we do not think the contemporaneous use of the marks on the goods of the parties will be likely to cause confusion or deceive the public. Therefore, the decision appealed from is affirmed.

Affirmed.

JACKSON, Judge, retired, recalled to participate.